IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DARRELL WAYNE WISE                                            PLAINTIFF

　　　　v.                        Civil No. 05-2132

MICHAEL OGLESBY;
LARRY CLARK; WAYNE
THOMPSON; and BILL RYAN                              DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the undersigned for report and recommendation is the civil rights complaint filed by Darrell Wayne Wise currently an inmate of the Texas Department of Criminal Justice.  Wise proceeds *pro se* and *in forma pauperis*.

Wise contends his constitutional rights were violated in the following ways during his and incarceration at the Polk County Detention Center: (1) he was denied adequate medical care; and (2) he was retaliated against because he filed numerous grievances and/or requested medical care.

An evidentiary hearing was conducted on October 23, 2007.  At the conclusion of the hearing, the matter was taken under advisement pending preparation of this report and recommendation.

## BACKGROUND & EVIDENCE PRESENTED

At the evidentiary hearing, the court heard the testimony of the following witnesses: (1) Sheriff Michael Oglesby; (2) Larry Clark; (3) Wayne Thompson; (4) Bill Ryan; (5) Jacob Shaw;

-1-

(6) Leonard Lawler; (7) Tommy Hubbard; (8) Kathern White; (9) Deborah Trotter; and (10) Darrell Wise.

The events that are the subject of this lawsuit began on February 2, 2004. Members of the Mena Police Department attempted to stop the vehicle Wise was driving. Wise then fled on foot. He was pursued by officers for a short period of time, then arrested, and transported to the Polk County Detention Center (PCDC). Wise was incarcerated at the PCDC until April 6, 2004.

For purposes of discussion, the court will summarize the testimony given at the evidentiary hearing. Although not in the order presented at the hearing, we will summarize the testimony of the plaintiff first.

### Darrell Wise

I first injured my heels on October 30, 2003, when fleeing from the Texas authorities. I broke both of my heels. I went to the hospital, Palo Pinto General Hospital. The doctor said I needed to go to an orthopedic specialist and would need surgery on my heels but I couldn't afford it. I was placed in a wheelchair. This is the prescription I was given for the wheelchair. *Plaintiff's Exhibit* 15.

In mid-January of 2004 I quit using the wheelchair. On February 2, 2004, I came to Arkansas for a super bowl party. I was involved in a confrontation with Melissa Turpin. This is what resulted in the police chase. I fled on foot.

I injured my heels going over the railroad tracks. I twisted my right foot. I told the officers I was in pain. They handed me over to Lawler. I told him twice I was in pain. I told him I had just gotten out of a wheelchair.

-2-

AO72A
(Rev. 8/82)

Once I got to the jail I told Clark, Thompson, and Lawler that I had re-injured my heels, that I had just gotten out of a wheelchair, and that I needed medical care. I told them I had broken heels. Clark took my ace bandages and ankle wraps away. I was in severe pain.

I told them my name was David Lee Reed. Lawler said I was not going to get medical care until I was identified. Lawler and another officer, who I now know was Ed Gibson, took me to be identified. So I told them who I was so I could get medical care. It didn't matter. They just handled me roughly and brought me back to jail.

I tried everything. I followed the procedures. I wrote letters. *See e.g., Plaintiff's Exhibit* 14. I had relatives call. Other inmates tried to help me. I filed a grievance. Clark verbally investigated the grievance. He told me I needed to get along with everyone. He said they didn't have the money. He said I needed to just get along.

I was filling out requests for medical care, I was asking for help, I was not getting anything. I did get aspirins from Thompson once. The aspirin didn't really help.

On February 28th, I was locked in the cell all day and not fed.

On March 2nd, the same day my sister wrote a letter I signed a consent for treatment. On March 12th, I finally saw the doctor. Dr. Sessler prescribed hydrocodone and Bextra, an antibiotic. He also authorized me to have my high top tennis shoes, without the laces. Wayne Thompson gave me the tennis shoes.

I remember Dr. Sessler saying he would x-ray me in a week. I told the jailers the doctor said I would go back for an x-ray in a week. The jailers said my appointment was in six weeks. I left before the six weeks was up. I left a few days before that. I went to the diagnostic unit in Huntsville, Texas.

-3-

AO72A
(Rev. 8/82)

On March 17th when I got back from court Clark took the tennis shoes away. I was in court trying to get access to the law library. I had also filed a motion for return of the money that was seized when I was arrested.

On April 1st I was in court again and got the shoes back. I followed their procedures and couldn't get anything.

When I got to Texas, I had to file a grievance to get my shoes because no orders had been sent with me from the PCDC. I was prescribed 800 mg. of Ibuprofen and shoes in Texas. I was also placed in administrative segregation so that I don't have to walk to go to the showers, to eat, etc.

I submitted a sick leave slip stating that the medication that the doctor had me on in Arkansas was stronger than the Ibuprofen I was prescribed in Texas. They didn't change the medication. The x-ray in Texas shows that I had fractures. *Plaintiff's Exhibit* 16 (old healed calcaneus fractures). I no longer take the Ibuprofen because I have Hepatitis C and the Ibuprofen is not good for my liver.

I'm in slides at the Sebastian County Detention Center. When I get transferred back to Texas after this hearing, I will get my shoes back.

### Sheriff Michael Oglesby

I am the chief law enforcement officer of the county. I have ten deputies. I have between twenty-five and thirty employees.

Larry Clark has been my jail administrator for thirteen to fifteen years. He handles the day to day running of the jail. He handles getting people to the doctor, to court, etc. I usually don't know what is going on in the jail unless there is a serious problem.

-4-

The policy with respect to inmate health care, requires an inmate to fill out a form if he has medical problems. The form is then taken to Clark. He reviews the form and determines if the inmate really needs to go to the doctor.

Most of the time we take the inmates to the doctor. We have twenty-two to twenty-five inmates at all times. There are almost always inmates complaining of headaches or anxiety attacks. Clark filters through the requests to see if someone needs to go to the doctor. If an inmate is really in pain or has a life threatening condition the inmate is taken to the doctor. We have a contractual relationship with the Western Arkansas Total Community Health (WATCH) Clinic.

We have to filter the requests to determine who really is sick. If someone says he has broken bones and his limbs are getting numb, it sounds like a serious problem. If we took everyone who submitted a request, it would cost $500,000 a year. Clark could look at Wise and see if he was having trouble getting around.

I vaguely remember Wise. His booking record makes mention of broken heels. I don't remember Wise making any requests for medical care. All the jailers have been to the jail standards training course. I don't recall when Bill Ryan completed his jail standards course.

As part of the booking process, a medical questionnaire is completed. These are medical requests submitted by Wise. *Plaintiff's Exhibits* 1 & 2. On the grievance forms there is place for a disposition to be written but nothing is written on either grievance submitted by Wise. *Plaintiff's Exhibits* 3 & 4. Ordinarily a disposition should be written on the bottom of the form. The chief deputy should make a notation regarding the disposition of the grievance.

-5-

On March 31st in court, Judge Looney said to make sure Wise had his tennis shoes.  If the Judge says to make sure he has shoes, we make sure he has them.  *Plaintiff's Exhibit* 6 at page 33.  Plaintiff's Exhibit 7 is the doctor's orders to the jail dated March 12, 2004.  I don't recall seeing that but if a doctor says he is supposed to have shoes, he is going to have shoes.

### Larry Clark

I'm the jail administrator.  I oversee the daily operations of the jail.  My duties include ensuring the inmates receive necessary medical care.  I've been the jail administrator for thirteen years.

Initially, if an inmates believe he has a problem that requires medical attention, the inmate asks for a medical request form.  The inmate is given the form and a pencil.  The inmate fills out the form and returns it to a jailer.  The form is forwarded to me.  I evaluate it and try to objectively determine if there is a true need for medical or dental treatment.  I base my objective determination on objective manifestations of illness or symptoms.  For instance, if an inmate complains he is sick to his stomach I look for vomiting, whether he is eating, etc.

We have twenty to twenty-five inmates per day.  I get three to five medical requests each day.  We have to make objective judgments about medical requests.  Inmates submit medical requests for a number of reasons.  Some submit requests simply to get out of jail, some to get back at the system, some because of drug seeking behavior, and some because of legitimate medical problems.

In this case Wise complained he was not able to walk.  I observed him as he was walking in the hallway.

AO72A
(Rev. 8/82)

I reviewed Wise's medical request dated February 8, 2004. *Plaintiff's Exhibit* 1 ("I have 2 broke heels and can['] t walk my feet are numb and hurt."). I made an objective observation of Wise in the jail and he was mobile and apparently without pain.

Wise was arraigned on February 9, 2004. *Plaintiff's Exhibit* 6. There was no mention of shoes during his arraignment.

I reviewed Wise's medical request dated February 16th. *Plaintiff's Exhibit* 2 ("My right leg has sharp pain shooting up my thigh and I can['] t walk on the cement for such pain."). I observed Wise on camera in the cell area and made the objective decision he did not merit a trip to the doctor. Wise was moving without apparent pain.

Normally on grievances I do write a disposition. I apparently did not put a disposition on Wise's grievances of February 16th or 27th. *Plaintiff's Exhibits* 3 & 4. I had knowledge of these grievances and made a determination. I apparently neglected to write a disposition on there. I may have been busy and just not gotten it done. To my recollection I didn't feel a visit to the doctor was warranted.

I never saw an order from the judge to leave shoes in Wise's cell. I see where the medical questionnaire form has a notation under history that says "leave his shoes with him in cell per judge." *Plaintiff's Exhibit* 8. I can't recall seeing a judge's order. There is also a notation in the area of the form where it is asking about various medical conditions where it says "other" it lists: "2 broke heels." *Id.* This information could have been added at a later time. The questionnaire can be edited at any time and no notation is made as to when the changes are made to the form.

-7-

There is also a medication report for the shoes. *Court's Exhibit* 1. It is a prescription for the shoes per the judge. *Id.*

Normally an order from the doctor would come to me. *Plaintiff's Exhibit* 7. I don't recall reading this order from the doctor. I do recall the doctor saying Wise should have shoes less the shoe laces. As far as I know, Wise got his shoes when the doctor ordered it. I don't recall Wise being prescribed medication.

From my observations of Wise, I felt there was no real need to take him to the doctor, However, when his attorney wrote me a letter, *Plaintiff's Exhibit* 5, I observed Wise again. To that point in time, I didn't believe Wise needed a doctor. Wise continued to complain so I concluded it was time to get a medical opinion.

The letter says: "This letter is to confirm that I have spoken with you on at least two occasions regarding Mr. Wise's need for medical treatment." *Plaintiff's Exhibit* 5. I don't remember having a conversation with Wise's attorney.

On March 2nd, I decided I was going to get him to the doctor. *Defendants' Exhibit* 1. I had Wise sign a consent to outpatient treatment form for the clinic. I set up an appointment. I guess I had actually made the decision to get him an appointment before I got the letter from Wise's attorney. The letter from the attorney is dated March 10th and I had Wise sign the consent form on March 2nd.

Normally we take the inmates to be seen by a nurse practitioner or physician's assistant. The inmates are always seen at the WATCH Clinic. The medical personnel do not come to the jail. I didn't feel Wise had exhibited enough manifestations of pain to warrant a trip to the doctor.

-8-

I'm initially the one who makes the determination whether an inmate gets medical attention or not. I have no specific protocol I follow. I simply make observations. If I feel there is a need to see a doctor, we try to make a appointment. There is nothing more formal than that. Nothing in writing. I use video observations part of the time. If other employees see a problem, they might bring it to my attention. I may sometimes seek input from other employees. In Wise's case, there was no input from other employees.

The video surveillance system has audio capabilities but the audio is usually turned off. I probably looked at Wise for a minute or two. I looked for expressions of pain. Wise was moving without apparent distress.

These are medication logs for Wise covering a period of time from March 12th to April 4th. *Defendants' Exhibit* 2. He received Hydrocodone and Bextra. The date March 27th is missing. I do not pass out medication.

Dr. Sessler's notes written when he saw Wise on March 12th indicate he will confirm his diagnosis by an x-ray as soon as one is available the first part of next week. *Plaintiff's Exhibit* 8. I never saw these notes until after this lawsuit was filed and didn't know Wise was supposed to have an x-ray. I didn't know the x-ray machine was broken or that Wise was to have a follow-up visit in six weeks. Wise was not in my custody six weeks later.

### Wayne Thompson

I'm a dispatcher jailer. My supervisor is Larry Clark.

If an inmate tells me he has a medical problem, I go to the file and get him a medical request form and a pencil. I then give the request form to my supervisor. If I observe an inmate

-9-

sick or in pain, I notify my supervisor.  I never make the decision if an inmate is taken to the doctor.

I don't recall Wise complaining of broken heels, or being in pain, or asking for medication.  I don't recall Wise asking for medical care.

I believe I booked Wise in.  I started the medical questionnaire on February 2nd when Wise was arrested and we started booking him in.  I wasn't there on February 4th when Wise was identified and the booking process was completed.

I see where it says on the medical questionnaire form under other "2 broke heels." *Plaintiff's Exhibit* 8 at page 1.  I don't recall typing in that he had two broken heels or that his shoes were to be left in his cell.  There would have had to be a written or oral order from the judge about the shoes for that to have been put on the form.  I know I didn't type the information about the shoes on the form.

The booking documents can be changed at any time.  There is no way to tell who entered the data on the form unless the jailer puts his name on there.  We don't usually put a date on the form to indicate when the information is updated.

The booking report I started was on February 2nd.  *Court's Exhibit* 2.  This is it.  *Id.*  It has my name on it as the booking officer.  *Id.*  However, the name I booked him under has been changed.  *Id.*

I was not working when Wise submitted his medical requests on February 8th or February 16th.  *Plaintiff's Exhibits* 1 & 3; *Plaintiff's Exhibit* 9.  I don't recall Wise submitting any grievances or formal complaints.  I never received a complaint from Wise that he was in pain in his heels.

-10-

I worked while Wise was incarcerated.  I never noticed him being in any pain.  If I noticed he was in pain, I would have notified Clark.  When I glanced at the cameras, I never saw Wise limping.

I signed Wise's transfer papers on April 6, 2004.  *Plaintiff's Exhibit* 10.  Under other medical conditions, I wrote: "2 injured heels he had them when he was arrested." *Id.*

I probably got this information when he went to the doctor.  I didn't know it before that.

**Bill Ryan**

I'm a dispatcher/jailer.  I've been employed at the PCDC since August of 2003.

If I book an inmate in, I would fill out the medical questionnaire.  I don't decide who goes to the doctor.  I just take the inmates a medical request form.  The inmate fills out the form.  I take the form to Clark.

I don't specifically recall Wise requesting medical care.  I don't specifically recall this medical request dated February 8th.  *Plaintiff's Exhibit* 1.  We see a lot of medical requests.  I take the requests and turn them in.  I never received a medical request that I didn't turn into Clark.

I do recall the February 16th grievance because it mentions my name.  *Plaintiff's Exhibit* 3.  I recall seeing it.  When I get grievances, I turn them in.

I don't specifically recall seeing Wise exhibit any manifestations of pain.  If I had noticed any, I would have asked him if he wanted to fill out a medical request and I would have passed it on to Clark.

Jailers distribute medications usually at breakfast and lunch.  I distributed medication.  On March 17th and March 18th it looks like I gave Wise hydroco/apap tablets.

-11-

*Defendants' Exhibit* 2.  It doesn't show that I gave you any Bextra tablets.  I don't have a clue what the dispensing directions were for the Bextra.  I didn't withhold any medications.

### Jacob Shaw

I was incarcerated at the PCDC the same time as Wise.  I was incarcerated there from my arrest on October 16, 2003, until late June 2004 when I was transferred to Sevier County.

During the time Wise was there, I was around him everyday.  When he first got there he looked to me to tell him how things ran, who you asked for grievances, sick calls, medical care, etc.

I went to court with Wise.  I was there for a pretrial hearing.  Wise asked for medical care.

I don't recall Wise asking other inmates to contact his family.

I told Wise it wouldn't do him any good to ask for a sick call form but I told him that is what you have to do.  I told him you had to get the form for the jailers but that the jail administrator made the decision.

I asked the jailers to help Wise out.  I tried to tell them Wise wasn't playing games.  I didn't talk to jailer Steven Scott though.  We had a real love hate relationship.  I felt the jailers thought Wise was playing games.

Wise would lay on his bunk with his heels above his head.  I knew he was in pain.  When he walked he would kind of roll from the side of his foot to the ball of his foot.  His face would kind of twitch.  He could get around.

-12-

I didn't know Wise ever got taken to the doctor.  I never saw Wise get any better.  I never saw Wise take any prescribed medication.  He was taking over-the-counter medication, Tylenol, the entire time he was there.

We were housed in the east wing.  The cells are one man cells.  So Wise could have gone to the doctor and I wouldn't have known it.

I was placed on lock-down for filing grievances.  You didn't get copies of your grievances back.

I was taken to the doctor and got stitches.  I was supposed to be taken back to have the stitches removed.  They never took me back.  I eventually removed the stitches myself forty-one days later.

I noticed Wise walked on the balls of his feet and the sides of his feet.  He told me he shattered his feet.

### Leonard Lawler

I'm an officer with the Mena Police Department.  Wise was arrested on February 2, 2004.

I took custody of Wise at the patrol car.  I did not take part in the foot pursuit of Wise.

I transported Wise to the PCDC.  Wise never complained he was in pain.

When we got to the PCDC, because of Wise's manner of walking, his gait, when he walked the twenty feet from the patrol car to the back door of the detention center, I asked him if he had been hurt during the chase.  Wise said no he had been hurt when running from the Dallas police and he had jumped off a cliff.  I took that to be a previous injury.  For some reason, I got it in my mind that the injury had happened two years ago.

-13-

One of the reasons I asked him if he was hurt is because he is my responsibility until I turn him over to the detention center.  I could have taken him for treatment myself.

When I transport an individual to the PCDC, I pat him down and usually wait while he is booked in.  Wise was being booked in by Wayne Thompson.  Wayne started the medical questionnaire.  I can't remember if they finished the medical questionnaire.  Wise did not request medical attention in my presence.

Wise gave us a false name and the booking process came to a halt.  He was placed into custody and dressed out.  The decision was made that he would be taken to Garland County to be identified.

Ed Gibson and I picked Wise up the next day to take him to Garland County.  We were on the way to Hot Springs when Wise told us who he was.  Wise said he had warrants in Texas.  At first he was very agitated.  He was cursing and bumping around in the back seat.  He was all over the back seat.  If I was in pain, I would have had my feet up.  He never said his movements were caused by pain.  I told him to chill out he was going to Hot Springs and we were going to get him identified and then get him booked in.

I thought he might be coming off methamphetamine.  I thought that might explain his behavior.

Wise never mentioned being in pain.  He never mentioned his heels.

His gait had improved from the day before.  He did not mention any injury.

When we were in Garland County we dealt with various detention center officials there and he never mentioned being in pain or any injury.  While we were running his prints, etc., to verify the information he had given us, we stood for probably twenty minutes and he didn't

-14-

mention any problems.  We stopped at McDonald's to get him something to eat, he never said a word about being in pain.

Wise's gait was pretty much the way he is in the courtroom today.  His gait is just not normal.  I didn't see Wise in pain.

**Tommy Hubbard**

I was chief of police of the Mena, Arkansas, police department.  I retired April 13, 2007.

Lawler brought Wise into the PCDC.  I was looking for Wise the day he was arrested but I didn't see him.  I was in the middle of a thicket looking for Wise.

The assistant chief took it upon himself to take Wise to the automated fingerprint identification system (AFIS) machine to have him identified.  I saw Wise when he was in the back seat of the patrol car.  Wise was bouncing from door to door and kicking the steel cage.

**Kathern White**

I am Wise's mother.  I called the PCDC several times.  Every time I called they said he hadn't seen the doctor yet.  Finally, I said if they didn't want to pay I would pay for it.  Last time I called, he said my son didn't need it or he would have all ready been.  I asked for the number for their internal affairs department.  I was told they didn't have one.  I got a call back within an hour and they said they would be taking him to the doctor.

I called my son's attorney, Rainwater, two or three times.  I talked to the secretary twice. The third time I called I talked to the attorney.  I told him I wanted him to see if he could get my son some medical care.  He said he would go over to the jail and see what he could do.

This is a letter I wrote my son.  *Plaintiff's Exhibit* 12.

-15-

AO72A
(Rev. 8/82)

### *Deborah Trotter*

I'm Wise's sister.  I got a letter from him letting me know he was hurting and couldn't get help.  I also got a phone call.

I made phone calls trying to get him help including calling Kay Bailey Hutchison's[1] office.  I was going to notify the civil rights commission.

I wrote this letter to him.  *Plaintiff's Exhibit* 13.  I didn't know he eventually got medical attention.

He injured his heels.  I don't know exactly when but it was in Texas.

### **DISCUSSION**

Wise asserts two separate claims.  First, he contends he was denied adequate medical care.  Second, he contends he was retaliated against.  We will address each claim separately.

### *Denial of Adequate Medical Care*

During his incarceration at the PCDC, Wise was a pretrial detainee.  In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials

---

[1] United States Senator from Texas.

-16-

actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094,

1096 (8th Cir. 2000)(*quoting   Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence,

and mere disagreement with treatment decisions does not rise to the level of a constitutional

violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th

Cir.1995)).

"[T]he failure to treat a medical condition does not constitute punishment within the

meaning of the Eighth Amendment unless prison officials knew that the condition created an

excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86

F.3d 761, 765 (8th Cir. 1996).   In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the

Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to
> receive a particular or requested course of treatment, and prison doctors remain
> free to exercise their independent medical judgment. Deliberate indifference may
> be demonstrated by prison guards who intentionally deny or delay access to
> medical care or intentionally interfere with prescribed treatment, or by prison
> doctors who fail to respond to prisoner's serious medical needs. *See Estelle v.
> Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976).  Mere
> negligence or medical malpractice, however, are insufficient to rise to a
> constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239.  *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Wise contends as soon as he was taken into custody he began requesting

medical treatment for his heels.  The medical questionnaire completed during the booking

procedure contains a notation on it that Wise had had two broken heels.  *Plaintiff's Exhibit* 8 at

page 1.  However, according to the testimony offered by Clark and Thompson this form can be

edited after it is initially created and no indication appears on the form of when it is edited, what

-17-

information is edited, why the information is edited, or who edited the form. It appears obvious that at least one entry on this form was added at a later date. Specifically, the form contains a notation that states as follows: "leave his shoes with him in cell per judge." The transcript entered into evidence indicates Judge Looney entered this verbal order on March 31, 2004. *Plaintiff's Exhibit* 6 at page 33.

The first written medical request Wise made was on February 8th. *Plaintiff's Exhibit* 1. On this form he says he has "2 broke heels and can['] t walk my feet are numb and hurt." *Id.* His next written request is on February 16th in which he says "my right leg has sharp pain shooting up to my thigh and I can't walk on the cement for such pain." *Plaintiff's Exhibit* 2.

On February 16th Wise submitted a grievance stating he had filled out medical requests on five different occasions asking for medical attention because of his two broken heels. *Plaintiff's Exhibit* 3. On February 27th he submitted another grievance indicating he had requested medical care on a number of occasions because of two broken heels. *Plaintiff's Exhibit* 4.

On March 2nd Wise signed a consent to treatment form. *Defendants' Exhibit* 1. On March 10th Wise's attorney submitted a letter to Clark. *Plaintiff's Exhibit* 5. On March 12th, Wise was seen by Dr. Sessler. *Plaintiff's Exhibit* 7. Dr. Sessler's notes from the visit provide as follows:

> This is a 39 year old resident of the local jail who has been incarcerated since early February. The patient's history is significant for jumping 30 or so feet off a "cliff" (mid Oct) while trying to avoid the law and I guess actually succeeded in Texas. The patient hobbled around for about 10 days and saw a doctor and at that time was given some pain medicine and advised to see an orthopedic specialist. He did not do this and was in Arkansas the first of February and ran afoul of the law in some fashion, and while trying to escape them while going up

-18-

the side of a railroad right-of-way, his feet began hurting, and he was caught.  He
has not had any of his Hydrocodone since that time.  He states he was on this
because of those injuries.  I am unable to x-ray at this time to confirm the
diagnosis, but it is compatible.  He does have very flat feet.  The patient's past
history is significant only for broken bones.  He has not had surgery, is not
allergic to any medications, and does not smoke. . . .  At this time, the patient has
flat feet, tenderness with no palpable deformity through the sole of the foot.
There is some hyperemia in the ankles.  I can not palpate a deformity, but history
is compatible.  We'll confirm that diagnosis as soon as we have x-ray available
the first part of next week.  In the interim, patient is given a prescription for
Lorcet 7.5 to take one at nighttime and repeat in 4 hours if needed.  We'll put him
on Bextra 1 daily with meals, 10 mg dose, #15 samples given.  **Impression**:  1)
Pain in feet secondary to #2.  2) Fractures by history, approximately 5 months
old.  Apparently, they are fractures of the calcanei.

*Plaintiff's Exhibit* 8 at page 8.

Dr. Sessler wanted to see Wise back in six weeks.  *Plaintiff's Exhibit* 7.  He also

indicated Wise could wear shoes without laces and should avoid prolonged standing.  *Id.*

Dr. Sessler was unable to x-ray Wise because the in-house x-ray machine was broken.

*Plaintiff's Exhibit* 8 at page 2.  Dr. Sessler did not regard the need for an x-ray as urgent since

the procedure was merely to confirm an old injury.  *Id.*

Wise presented with subjective symptoms only.  *Plaintiff's Exhibit* 8 at page 3.  Wise

reported that it was painful to walk but "implied he could get around when he had pain pills and

needed more.  His gait showed some pain but could walk."  *Id.*

The court is concerned in this case that the defendants have no established procedure for

evaluating medical requests.  While there is an established procedure for the submission of

medical requests, once submitted the medical requests are evaluated solely by one individual

who is without any type of medical training.  No documentation is kept as to how the requests

are evaluated, no input is routinely sought from the jailers who deal directly with the inmates,

the inmates are not spoken to directly, and the inmates are typically only observed once for a very brief period of time.

There are no doubt many medical conditions which do not manifest themselves in visible symptoms. Thus, Clark's apparent resort to objective manifestations of illness to determine if an inmate should go to a doctor would not in those cases provide an accurate assessment of the need for medical treatment. However, in this instance, Wise was claiming broken heels and difficulty walking as a result of pain from those broken heels. Wise's condition would therefore be one that would be subject to observation.

On the record before the court in this case, we do not believe Wise has established by a preponderance of the evidence that the defendants acted with deliberate indifference to his serious medical needs. At issue in this case, is the delay in Wise receiving medical care from the date of his initial booking into the PCDC on February 2nd until he was seen by Dr. Sessler on March 12th.

During this time, Wise maintains he was in pain and had difficulty walking. The testimony, including that of Wise and Shaw, indicates Wise was able to walk without assistance. He not only moved around the PCDC but was also taken to Garland County to be identified and the testimony indicted he was required to walk around various areas of the facility there. Wise additionally appeared in Polk County Circuit Court several times, *Plaintiff's Exhibit* 6.

When Wise was examined by a doctor, Dr. Sessler noted evidence of an old fracture, some tenderness, and some "hyperemia[2] in the ankles." *Plaintiff's Exhibit* 8 at page 8. Dr.

---

[2]Hyperemia is defined as "excess of blood in a body part (as from an increased flow of blood due to vasodilation)." Merriam-Webster Medical Dictionary http://www2.merriam-webster.com/cg9-bin/mwmednlmnl (accessed October 31, 2007). Vasodilation is defined as a "widening of the lumen of blood vessels." *Id.*

Sessler's notes indicate only that Wise's gait showed "some pain." *See Plaintiff's Exhibit* 8 at page 3.

There is no evidence Wise's condition deteriorated as a result in the delay in his receiving medical treatment. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment. To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ..." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations omitted). Wise has presented nothing establishing a detrimental *effect* of the delay in treatment.

Dr. Sessler ordered treatment in the form of pain medication and Bextra a medication used to relieve tenderness, swelling, and stiffness. Dr. Sessler also directed that Wise be allowed to wear his shoes without the laces. When he was transferred to Texas, Wise was prescribed Ibuprofen and allowed to wear tennis shoes. Nothing indicates his condition worsened as a result of the delay in his receiving pain medication or his tennis shoes while at the PCDC.

All testimony established the decisions with regard to medical care at the PCDC are made by one individual, Clark. While Wise may have experienced some pain, we do not believe Wise has established that Clark's inaction in this case amounted to deliberate indifference.

With respect to the confusion regarding the order that Wise be allowed to have his shoes in his cell, it is clear personnel at the PCDC received the order and it was entered in Wise's record. However, it is not clear how the system of communicating this order to others, including the personnel who deal directly with the prisoners on a daily basis, worked. In fact, this system

-21-

appears to be lacking somewhat.  We do not believe this lack of communication regarding the prescription for shoes translated into deliberate indifference.  Furthermore, we believe the delay in treatment was due at most to negligence on Clark's part.  *See e.g, Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998)(some delay in treating an inmate's broken hand, even if negligent, did not amount to deliberate indifference).

Finally, there is no basis on which any of the remaining defendants can be held liable. It was clear from the testimony offered that Clark made all decisions as to whether an inmate of the PCDC received medical care.  *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

### *Retaliation*

To succeed on a § 1983 retaliation claim, Wise must prove that "he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [Wise] that would chill a person of ordinary firmness from engaging in that activity."  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007)(*citing Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir.2004), *cert. denied,* 546 U.S. 860, 126 S. Ct. 371, 163 L. Ed. 2d 140 (2005)).

In this case, Wise contends he was retaliated against for filing grievances, for repeatedly requesting medical care, and for pursuing his claims in court.  Wise contends the retaliation took the form of being locked down on February 28th, not receiving medical care, and having his tennis shoes taken away between March 17th and April 1st.

-22-

Wise filed two grievances--one on February 16th and one on February 27th. *Plaintiff's Exhibits* 3 & 4. He submitted no grievances about being locked down on February 28th. On March 2nd he signed a consent for treatment at the WATCH Clinic and an appointment was scheduled for him to see Dr. Sessler on March 12th. With the exception of March 17th and 18th, when it appears he missed doses of Bextra, Wise received the medication prescribed by Dr. Sessler. Dr. Sessler also indicated Wise should be allowed to have his tennis shoes without the laces. Wise indicates he was given his tennis shoes for a period of time, from the 12th to the 17th, and then the tennis shoes were taken away from him by Clark following court on the 17th.

On March 31st, while in court, Wise advised Judge Looney that he needed his shoes. *Plaintiff's Exhibit* 6 at page 33. Sheriff Oglesby was advised to make the shoes available. *Id.* Wise indicates he got the shoes back on April 1st.

The filing of grievances and the filing of lawsuits are protected First Amendment activity, *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007)(*citing Dixon v. Brown,* 38 F.3d 379, 379 (8th Cir.1994)). In this case, we believe the record is simply devoid of evidence that provides a basis for inferring a retaliatory intent on defendants' behalf. With respect to the alleged lock-down, the only testimony offered about this was Wise's simple assertion that he was locked in his cell for the entire day and not fed. He offered no other testimony or information as to why he believed this lock-down was in retaliation for his filing grievances regarding his lack of medical care. Simply because the alleged lock-down occurred after he filed grievances, does not make it retaliatory conduct. "Temporal proximity is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006).

-23-

With respect to the shoes, we believe the record establishes that defendants' manner of keeping the medical records of inmates is at best inefficient. This in inefficiency does not establish retaliatory conduct. Nor does Clark's delay in referring Wise to medical personnel constitute retaliatory conduct. Every denial, or potential denial of medical care, does not also constitute retaliatory conduct. Wise's mere belief that defendants acted out of retaliatory motive is simply insufficient. *See e.g., Wilson v. Northcutt*, 441 F.3d 586, 593 (8th Cir. 2006).

## CONCLUSION

For the reasons stated, I recommend that judgment be entered in the defendants' favor and that the complaint be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of November 2007.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-24-